**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HANNIBAL WHEATLEY, on behalf of himself                Case No. 24-cv-7324
and all others similarly situated, :

                    Plaintiff,                **CLASS ACTION COMPLAINT**
                                         **& DEMAND FOR JURY**
     v.                **TRIAL**

32 BAR BLUES LLC,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### DEFENDANT 32 BAR BLUES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AT LAW

     NOW COMES the Defendant, 32 BAR BLUES LLC, by and through its attorneys, O'HAGAN MEYER, LLC, and in answer to Plaintiff's Complaint at Law, Defendant states as follows:

### INTRODUCTION

     1.    Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using his computer. (**Ex. A** – HANNIBAL WHEATLEY, Legally Blind Diagnosis, dated 9/1/2024). Plaintiff uses the terms "blind" or "visually-impaired," as Plaintiff's central visual acuity with correction is less than or equal to 20/200. Some sight-impaired individuals who meet this definition have limited vision while others have zero vision.

**ANSWER:**    **Defendant lacks sufficient knowledge to admit or deny the allegations set forth in Paragraph 1, and on that basis denies each and every allegations set forth in Paragraph 1.**

2.    Defendant, 32 BAR BLUES LLC is a Delaware Limited Liability company that owns and maintains the Website, www.32barblues.com.(the "Website" or "Defendant's Website") (last visited September 26, 2024)

**ANSWER:    Defendant admits it is a limited liability company and owns the www.32barblues.com website.  Defendant denies the remaining allegations in Paragraph 2.**

3.    Plaintiff brings this civil action against Defendant for their failure to design, construct, maintain, and operate the Defendant's Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to the Website, www.32barblues.com and therefore its denial of the goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

**ANSWER:    Defendant admits only that Plaintiff brings this lawsuit.  Defendant denies the remaining allegations in Paragraph 3.**

4.    Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired,[1] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons live in the State of New York.[2]

**ANSWER:    In response to Paragraph 4 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis, denies each and every allegation.**

5.    Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full

---

[1] *See* United States Census Bureau Report.
[2] *See* 2016 National Federation for the Blind Report

integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

**ANSWER:    The allegations set forth in Paragraph 5 of the Complaint state legal conclusions for which no responsive pleading is required, and Defendant respectfully refers all matters of law to the Court.  To the extent a response is required, Defendant denies the allegations set forth in Paragraph 5.**

6.    Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

**ANSWER:    Defendant denies the allegations set forth in Paragraph 6 of the Complaint.**

## JURISDICTON AND VENUE

7.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

**ANSWER:    Defendant denies the allegations set forth in Paragraph 7 of the Complaint, except admits that the Plaintiff purports to state the relief being requested and the basis for the jurisdiction in this Court, and respectfully leaves all questions of law to this Court.**

8.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq*.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*., ("NYCHRL") & § 296 *et seq*.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

**ANSWER:    Defendant denies the allegations set forth in Paragraph 8 of the Complaint, except admits that the Plaintiff purports to state the relief being requested and the basis for the jurisdiction in this Court, and respectfully leaves all questions of law to this Court.**

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the Internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on a number of occasions, the subject Website within this judicial District.

**ANSWER:    Defendant denies the allegations set forth in Paragraph 9 of the Complaint, except admits that Plaintiff purports to state the basis for venue in this Court, and respectfully leaves all questions of law to this Court.**

10.     Defendant, 32 BAR BLUES LLC is a Delaware Limited Liability company with its principal place of business located at 1901 Holser Walk, Unit 300, Oxnard, California, 93036, and is subject to personal jurisdiction in this District because Defendant purposefully targets and otherwise solicits business from New York State residents through its highly interactive Website, www.32barblues.com. (last accessed on September 26, 2024).

**ANSWER:    Defendant admits only that it is a Delaware limited liability company.  The remaining allegations set forth in Paragraph 10 of the Complaint state legal conclusions for**

**which no responsive pleading is required, and Defendant respectfully refers all matters of law to the Court. To the extent a response is required, Defendant denies the allegations set forth in Paragraph 10.**

11.    Defendant has been and is committing the acts or omissions alleged herein in the Southern District of New York, and in so doing, violated the rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers, causing them to suffer injury. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District on several separate occasions.

**ANSWER:    Defendant denies the allegations set forth in Paragraph 11.**

12.    Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's Website www.32barblues.com in the future. Relevant precedent has established that venue is proper in the district in which Plaintiff tried and failed to access a website.[3]

**ANSWER:    Defendant denies the allegations set forth in Paragraph 12.**

13.    The United States Department of Justice Civil Rights Division has recently stated that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those

---

[3] *See, e.g. Chloe NA v. Queen Bee of Beverly Hills, LLC.,* 616 F.3d 158 (2d Cir. 2010*); Reed v. 1-800-Flowers.com, Inc.*, 327 F.Supp.3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S.Ct. 1017 (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products).

[ed class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and the NYCHRL. Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access or "NVDA."

**ANSWER:   Defendant denies Plaintiff's interpretation set forth in Paragraph 13 of the Complaint and denies the remaining allegations set forth in Paragraph 13 of the Complaint.**

14.     Upon information and belief, Defendant, 32 BAR BLUES, LLC is a California Limited Liability corporation and their concomitant Website, www.32barblues.com is a "public accommodation" within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(j). *See Andrews v. Blick Art Materials, LLC*, 268 F.Supp.3d 381 (E.D.N.Y. 2017); *Romero v. 88 Acres Foods, Inc.,* 580 F.Supp.3d 9 (S.D.N.Y. 2022).

**ANSWER:   Defendant denies it is a California limited liability corporation.  The remaining allegations set forth in Paragraph 14 of the Complaint state legal conclusions for which no responsive pleading is required, and Defendant respectfully refers all matters of law to the Court.  To the extent a response is required, Defendant denies the allegations set forth in Paragraph 14.**

<u>**NATURE OF ACTION**</u>

15.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

**ANSWER:   Defendant admits the allegations in Paragraph 19.**

16.     In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the

visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen reading software, blind, and visually-impaired persons are unable to fully access websites, and the information, products, goods and contained thereon.

**ANSWER:    Defendant denies the allegations in Paragraph 16.**

17.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screens-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access "NVDA."

**ANSWER:    Defendant admits the allegations in Paragraph 17.**

18.    For screen-reading software to function, the information on a website must be capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

**ANSWER:    Defendant admits the allegations in Paragraph 18.**

19.    Screen readers have rules and expectations about what the gathered information is and should be and uses sophisticated rules to interpret what it has "seen" i.e., gathered with help from the operating system, the app in question, and other ways. Based on information gathered and subsequently interpreted, screen readers use components such as text-to-speech (TTS), braille, and other output mechanisms to present screen content. (*see, e.g.* NVDA illustration below):



**ANSWER:    In response to Paragraph 19 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis, denies each and every allegation.**

20.    The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1). WCAG 2.1 are well-established guidelines for making

websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

**ANSWER:    Defendant admits that the World Wide Web Consortium has published the WCAG 2.1  Defendant denies the remaining allegations in Paragraph 20.**

21.    Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

    a.    A text equivalent for every non-text element is not provided;

    b.    Title frames with text are not provided for identification and navigation;

    c.    Equivalent text is not provided when using scripts;

    d.    Forms with the same information and functionality as for sighted persons are not provided;

    e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

    f.    Text cannot be resized without assistive technology up to 200% without losing content or functionality;

    g.    If the content enforces a time limit, the user is not able to extend, adjust or disable it;

    h.    Web pages do not have titles that describe the topic or purpose;

    i.    The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

    j.    One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

    k.    The default human language of each web page cannot be programmatically determined;

l.    When a component receives focus, it may initiate a change in context;

m.   Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.    Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.    In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDF); and

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

**ANSWER:    Defendant denies the allegations in Paragraph 21.**

22.    Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

**ANSWER:    Defendant denies the allegations in Paragraph 22.**

## <u>STANDING</u>

23.    Plaintiff, HANNIBAL WHEATLEY, is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL.  For Plaintiff to access the Internet, he must utilize a computer which contains a screen-reader, such as "NVDA for Windows."

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 and on that basis denies each and every allegation.**

24.    Screen reader "software translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017) As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on June 20, 2024; estimating 26.0 million adult American reported sight deficiency).

**ANSWER:    In response to Paragraph 24 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis, denies each and every allegation.**

25.    Plaintiff was injured when attempting to access Defendant's Website www.32barblues.com on September 16, 2024, from his home in Bronx County, in an effort to search for and purchase Defendant's products and services, including, their "**Honey Cotton Slub Henley" Long Sleeve Shirt, Soft 100% cotton, brushed inside. 4-snap neck with velvet trim in collar and hem,**" but encountered various access barriers, which denied him full and equal access to Defendant's online goods, content, and services. *See* www.32barblues.com/shop/product/

**ANSWER:    Defendant denies the allegations in Paragraph 25.**

26.    Around September 14, 2024, the Plaintiff discovered the Defendant's website, www.32barblues.com, following a glowing recommendation from a close friend who was aware of the Plaintiff's condition and the potential benefits of online shopping. Plaintiff has recently faced significant challenges shopping in local New York malls or stores, due to the influx of individuals who often disregard the needs of the sight-impaired. This situation has been worsened by an increase in individuals who show little regard for law and order. During a recent shopping trip to Macy's Fifth Avenue, the Plaintiff was pushed and shoved against a rack of clothing and then to the floor by a group of unruly individuals, who were later described as behaving like a "pack of wild animals," taking what they wanted without paying, and fleeing from security and police. Thus, Plaintiff has relied strictly upon online shopping and was directed to www.32barblues.com. However, at the time of the Plaintiff's initial visit, the following access barriers were present on the Defendant's Website.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and on that basis denies each and every allegation.**

27.     First, the Website requires a potential customer to use a mouse to complete a transaction and/or to establish a Profile prior to purchasing and choosing between delivery and pick-up. However, notwithstanding Plaintiff's expert use of the screen-reading program, NVDA, the site requires the entry of personal information into different fields, none of which are discernable to a sight-impaired user. Plaintiff was unable to determine what information was required, nor where or which field to enter such information. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Websites inaccessible design, which requires the use of a mouse to establish a Profile, and/or to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on Jenniferbehr.com. In addition, the Website provided essential information about most of the products, including color, type of material, available sizes, and pricing. This level of detail was not only informative but also crucial for the Plaintiff, who relies on these specifics to make informed purchasing decisions. As a sight-impaired individual, the Plaintiff cannot visually assess products and therefore depends heavily on detailed descriptions to understand the characteristics and suitability of the items before making a purchase.

**ANSWER:** **Defendant denies the allegations in Paragraph 27.**

28.    The user reviews and ratings on the Website further added to their credibility, offering real-world experiences of other consumers. However, despite the Websites apparent thoroughness and transparency, Plaintiff encountered significant accessibility barriers that prevented him from fully utilizing its services, when he attempted to access the site by himself to discover crucial information regarding the desired and/or other products. This has not only limited his ability to make informed decisions but also infringed on his rights as a consumer and individual with a disability.

**ANSWER:    Defendant denies the allegations in Paragraph 28.**

29.    First, as stated the Website www.32barblues.com contains thousands of individual products, each with its own "product tile" or "product card," a separate area that displays the products image, name, price, and other relevant information. Each product tile contains a "link," which serves as a navigational tool that directs users to different sections of the site or to an entirely different site altogether. When clicked, it transports the user from their current location to the destination specified by the link. In the context of product tiles, each tile contains a link that, when clicked, brings the user to a specific product page allowing the user to explore more details. This allows the user to explore more details, such as its features, pricing and reviews. Therefore, links play a crucial role in enhancing user experience, facilitating easy navigation and structuring their websites information hierarchy. They are fundamental to the interconnected nature of the Internet.

**ANSWER:    Defendant denies that its website "contains thousands of individual products", that the website has "product tile" or "product card" or "a separate area that displays the products image, name, price, and other relevant information."   Answering further, Defendant denies the remaining allegations in Paragraph 29.**

30.    However, a link without an accessible name can significantly impact the blind user who relies on a screen reader. If a link lacks an accessible name, the screen reader may not be able to provide meaningful information about the links function or destination. This can lead to confusion and difficulty in navigation for the user. It's crucial for web accessibility that all links have descriptive and unique and accessible names. This ensures that screen reader users can understand and use the website effectively, enhancing their overall user experience. It's not just good practice, but it's also a requirement under the Web Content Accessibility Guidelines. which ideally brings the user to that specific product.

**ANSWER:    In response to Paragraph 30 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis, denies each and every allegation.**

31.    For instance, as stated, Plaintiff sought information about their "**Honey Cotton Slub Henley" Long Sleeve Shirt, Soft 100% cotton, brushed inside. 4-snap neck with velvet trim in collar and hem,**" which was a highly recommended product online in general.

**ANSWER:    In response to Paragraph 31 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis, denies each and every allegation.**

32.    However, when attempting to discover crucial information about this product and others with similar properties from the Website including any potential issues with size and color options; Plaintiff was unable to discern any further information other than what was contained within the Product Tile, as a result of the numerous access barriers, including but not limited to: "Redundant Alternative Text," "Linked Images Missing Alternative Text," and "Missing Form Labels."

**ANSWER:    Defendant denies its website contains "Product Tile" and denies the remaining allegations in Paragraph 32.**

33.    As a result of visiting Defendant's Website from his home, Plaintiff is aware that significant portions of www.32barblues.com are unusable, due to various barriers that deny him full and equal access to Defendant's online products and services.

**ANSWER:    Defendant denies the allegations in Paragraph 33.**

34.    On September 26, 2024, Plaintiff's counsel conducted accessibility audits of www.32barblues.com in order to memorialize the existence of the aforementioned barriers which prevented Plaintiff from conducting a search for desired products, information, and services and the potential purchase of the same. Specifically, Plaintiff's counsel conducted accessibility audits using the **Sort Site** accessibility tester, by Power Mapper ™. This program confirmed the presence of multiple violations of the ADA, as reflected within the completion of said audits. *See* **Ex. B SORT SITE** Report, dated September 25, 2024 (annexed & attached) which indicate the presence of dozens of access barriers including the presence of Redundant Alt. Text; No Page Regions, numerous Broken Links, and the Lack of Alt. Text (including the aforementioned statement).

**ANSWER:    Defendant denies the allegations in Paragraph 34.**

35.    When Plaintiff encountered these barriers, they caused confusion and exasperation when unable to discern crucial information about the desired products.

**ANSWER:    Defendant denies the allegations in Paragraph 35.**

36.    Due to the aforementioned access barriers, Plaintiff was prevented from discerning crucial information about the desired goods and services and was unable to complete his search and purchase those desired products and services.

**ANSWER:    Defendant denies the allegations in Paragraph 36.**

37.     Defendant's denial of full and equal access to and enjoyment of the goods, benefits, and services of the Website, has caused Plaintiff to suffer an injury in fact due to Plaintiff's inability to purchase the desired items, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

**ANSWER:    Defendant denies the allegations in Paragraph 37.**

38.     Despite this direct harm and frustration, Plaintiff is determined to access this Website again – following their remediation. Plaintiff's aim is to explore and purchase from the Broad array of products offered by Defendant with the goal to identify the most suitable products which suit his clothing style, and price range. Plaintiff intends to utilize the services of Defendant and their Website, www.32barblues.com because he has in the past utilized similar websites that took advantage of his physical condition and limited financial position by failing to send the ordered products or if sent, the desired product would not be the one advertised. However, Plaintiff's online research revealed that this company is one of the most reputable, their products extremely cost-effective, and their website contains thousands of related products.

**ANSWER:    Defendant denies that its "website contains thousands of related products" and denies the remaining allegations in Paragraph 38.**

39.     Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

> a.    Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.    Failing to construct and maintain a Website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

**ANSWER:    Defendant denies the allegations in Paragraph 39.**

40.    Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

**ANSWER:    Defendant denies the allegations in Paragraph 40.**

41.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires.

**ANSWER:    Defendant denies the allegations in Paragraph 41.**

42.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Websites. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b.    Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant Website complies under the WCAG 2.1 guidelines; and;

d.    Develop an accessibility policy that is clearly disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

**ANSWER:** **Defendant denies the allegations in Paragraph 42.**

43.     Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

**ANSWER:** **Defendant denies the allegations in Paragraph 43.**

44.     Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from their online platforms. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Websites.

**ANSWER:** **Defendant admits it has invested sums to develop and maintaining its Website. Defendant denies the remaining allegations in Paragraph 44.**

<u>**CLASS ACTION ALLEGATIONS**</u>

45.     Plaintiff, HANNIBAL WHEATLEY, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

**ANSWER:** **Defendant denies the allegations in Paragraph 45.**

46.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website

and as a result have been denied access to the equal enjoyment of goods and services offered, during the relevant statutory period.

Common questions of law and facts exist amongst the Class, including:

a.     Whether Defendant's Website is a "public accommodation" under the ADA;

b.     Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

**ANSWER:    Defendant denies the allegations in Paragraph 46.**

47.    Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA, NYSHRL, NYCRL and/or the NYHRL by failing to update or remove access barriers on the Website so that the websites can be independently accessible to the Class.

**ANSWER:    Defendant denies the allegations in Paragraph 47.**

48.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

**ANSWER:    Defendant denies the allegations in Paragraph 48.**

49.    Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

**ANSWER:    Defendant denies the allegations in Paragraph 49.**

50.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

**ANSWER:    Defendant denies the allegations in Paragraph 50.**

51.    Moreover, judicial economy will be served maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

**ANSWER:    Defendant denies the allegations in Paragraph 51.**

52.    Plaintiff, HANNIBAL WHEATLEY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

**ANSWER:    In response to Paragraph 52 of the Complaint, Defendant repeats and reaffirms each and every response to Paragraph 1 through 51 as if fully set forth herein.**

1.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person whom owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

**ANSWER:    The allegations set forth herein state legal conclusions for which no responsive pleading is required and defendant respectfully leaves all questions of law to the Court.**

53.    Defendant's Website is a "public accommodation" within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website that is offered as a link to the dispensary and entity is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

**ANSWER:    The allegations in Paragraph 53 state legal conclusions for which no responsive pleading is required, and Defendant respectfully leaves all questions of law to the Court.  To the extent a response is required Defendant denies the allegations in Paragraph 53.**

54.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

**ANSWER:    The allegations in Paragraph 54 state legal conclusions for which no responsive pleading is required, and Defendant respectfully leaves all questions of law to the Court.**

55.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can

demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

**ANSWER:    The allegations in Paragraph 56 state legal conclusions for which no responsive pleading is required, and Defendant respectfully leaves all questions of law to the Court.**

56.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

**ANSWER:    Defendant denies the allegations in Paragraph 56.**

57.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section titled **Prayer For Relief** below.

**ANSWER:    Defendant admits Plaintiff makes a request for relief, but denies Plaintiff is entitled to any relief set forth in Paragraph 68 of the Complaint.**

<u>**SECOND CAUSE OF ACTION**</u>

**(Violation of the New York City Human Rights Law)**

**("NYCHRL")**

58.     Plaintiff, HANNIBAL WHEATLEY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

**ANSWER:   In response to Paragraph 58 of the Complaint, Defendant repeats and reaffirms each and every response to Paragraphs 1 through 57 as if fully set forth herein.**

59.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

**ANSWER:   The allegations set forth in Paragraph 59 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.**

60.     Defendant's physical located at 1901 Holser Walk, Unit 300, Oxnard, California, 93036, is unquestionably a "place of public accommodation" within the definition of N.Y.C. Admin. Code § 8-102, and the Website www.32barblues.com, is an extension of such dispensary and also considered to be a "place of public accommodation," within the definition of N.Y.C. Admin. Code § 8-102(9).

**ANSWER:   Defendant denies that it has a physical location open to the public located at 1901 Holser Walk, Unit 300, Oxnard, California.  The remaining allegations set forth in Paragraph 60 state legal conclusions for which no responsive pleading is required and**

**Defendant respectfully leaves all questions of law to the Court.  To the extent a response is required Defendant denies the remaining allegations set forth in Paragraph 60.**

61.    The defendant is subject to the NYCHRL as it owns and operates the Website www.32barblues.com, thereby qualifying as a 'person' under N.Y.C. Admin. Code § 8-102(1)."

**ANSWER:    The allegations set forth in Paragraph 61 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 61.**

62.    Defendant is in violation of N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website causing the Website and the services integrated therein, to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

**ANSWER:    Defendant denies the allegations in Paragraph 62.**

63.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

**ANSWER:    Defendant denies the allegations in Paragraph 63.**

64.    Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

      a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

**ANSWER:    Defendant denies the allegations in Paragraph 64.**

65.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

**ANSWER:    Defendant denies the allegations in Paragraph 65.**

66.    As such, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and other members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

**ANSWER:    Defendant denies the allegations in Paragraph 66.**

67.    Defendant's actions were and are in violation of the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

**ANSWER:    Defendant denies the allegations in Paragraph 67.**

68.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

**ANSWER:     Defendant denies the allegations in Paragraph 68.**

69.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

**ANSWER:     Defendant denies the allegations in Paragraph 69.**

70.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**ANSWER:     Defendant denies the allegations in Paragraph 70.**

<u>**THIRD CAUSE OF ACTION**</u>
**(New York State Human Rights Law)**
**("NYSHRL")**

71.     Plaintiff, HANNIBAL WHEATLEY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

**ANSWER:     In response to Paragraph 71 of the Complaint, Defendant repeats and reaffirms each and every response to Paragraphs 1 through 70 as if fully set forth herein.**

72.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

**ANSWER:     The allegations set forth in Paragraph 72 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this**

Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 72.

73.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

ANSWER:     The allegations set forth in Paragraph 73 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 73.

74.     Defendants, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

ANSWER:     The allegations set forth in Paragraph 74 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 74.

75.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

ANSWER:     Defendant denies the allegations in Paragraph 75.

76.     Pursuant to Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

**ANSWER:    The allegations set forth in Paragraph 76 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 76.**

77.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

**ANSWER:    The allegations set forth in Paragraph 77 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 77.**

78.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired, full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

**ANSWER:    Defendant denies the allegations in Paragraph 78.**

79.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

**ANSWER:    Defendant denies the allegations in Paragraph 79.**

80.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

**ANSWER:    Defendant admits that the World Wide Web Consortium has published the WCAG 2.1. Defendant denies the remaining allegations in Paragraph 80.**

81.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

**ANSWER:    Defendant denies the allegations in Paragraph 81.**

82.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass causing irreparable harm.

**ANSWER:    Defendant denies the allegations in Paragraph 82.**

83.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties and fines for each and every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq*.

**ANSWER:    Defendant denies the allegations in Paragraph 83 of the Complaint.**

<u>**FOURTH CAUSE OF ACTION**</u>
**(Violation of New York State Civil Rights)**
**("NYCLR")**

84.    Plaintiff, HANNIBAL WHEATLEY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

**ANSWER:    In response to Paragraph 84 of the Complaint, Defendant repeats and reaffirms each and every response to Paragraphs 1 through 83 as if fully set forth herein.**

85.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

**ANSWER:    Defendant lacks sufficient knowledge to admit or deny the allegations set forth in Paragraph 85 and therefore demands strict proof .**

86.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

**ANSWER:    The allegations set forth in Paragraph 86 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 86.**

87.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

**ANSWER:    The allegations set forth in Paragraph 87 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.**

88.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

**ANSWER:    The allegations set forth in Paragraph 88 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 88.**

89.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

**ANSWER:**    **Defendant denies the allegations in Paragraph 89.**

90.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

**ANSWER:**    **Defendant denies the allegations in Paragraph 90.**

91.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

**ANSWER:**    **Defendant denies the allegations in Paragraph 91.**

92.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id…*

**ANSWER:**    **The allegations set forth in Paragraph 92 state legal conclusions for which no responsive pleading is required and Defendant respectfully leaves all questions of law to this Court.  To the extent a response is required, Defendant denies the allegations in Paragraph 92.**

93.    Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination including civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.*

**ANSWER:**    **Defendant denies the allegations in Paragraph 93.**

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

94.    Plaintiff, HANNIBAL WHEATLEY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

**ANSWER:   In response to Paragraph 94 of the Complaint, Defendant repeats and reaffirms each and every response to Paragraphs 1 through 93 as if fully set forth herein.**

95.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq. prohibiting discrimination against the blind.

**ANSWER:   Defendant denies the allegations in Paragraph 95.**

96.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know its respective rights and duties and act accordingly.

**ANSWER:   Defendant denies the allegations in Paragraph 96.**

## AFFIRMATIVE DEFENSE

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1.    The Complaint, and each and every claim therein, fails to state a claim for which relief can be granted and should, therefore, be dismissed.

### SECOND AFFIRMATIVE DEFENSE
### (Effective Access)

2.    The purported barriers provide effective access to Plaintiff. Even if the features alleged in the Complaint did not comply with access standards, the features nonetheless provided

effective access to Plaintiff because any alleged noncompliance was de minimis, the features were usable and accessible despite their alleged noncompliance, and/or Plaintiff was able to use and access the features.

## THIRD AFFIRMATIVE DEFENSE
**(Removal of Barriers Was Not Readily Achievable)**

3.     Any allegedly wrongful acts or omissions performed by Defendant or its agents, if there were any, do not subject Defendant to liability because the removal of the alleged barriers identified in the Complaint was not readily achievable or easily accomplishable and/or able to be accomplishable.

## FOURTH AFFIRMATIVE DEFENSE
**(Defendant Provided Services Via Alternative Methods)**

4.     Any allegedly wrongful acts or omissions performed by Defendant or its agents, if there were any, do not subject Defendant to liability because Defendant accommodated or was ready and willing to accommodate Plaintiff's alleged disabilities by providing access via "alternative methods" other than the removal of alleged barriers (42 U.S.C. §12182), including through telephone, email, or at Defendant's physical stores.

## FIFTH AFFIRMATIVE DEFENSE
**(Technically Infeasible)**

5.     Any allegedly wrongful acts or omissions performed by Defendant or its agents, if there were any, do not subject Defendant to liability because full compliance with the alleged standards for the alleged barriers identified in the Complaint would be technically infeasible.

## SIXTH AFFIRMATIVE DEFENSE
**(Mootness)**

6.     To the extent any claim is moot or not ripe for adjudication, that claim should be dismissed.

**SEVENTH AFFIRMATIVE DEFENSE**
**(No Damages Or Injury)**

7.      Plaintiff has not incurred any actual damages or injury.

**EIGTH AFFIRMATIVE DEFENSE**
**(No Irreparable Injury And/Or Adequate Remedy At Law)**

8.      Plaintiff's claims for injunctive and other equitable relief are barred because he will not suffer any irreparable injury if injunctive or other equitable relief is denied and/or because he has an adequate and complete remedy at law.

**NINTH AFFIRMATIVE DEFENSE**
**(Ripeness)**

9.      Plaintiff's claim for injunctive and other equitable relief is not ripe as the Department of Justice has been tasked with promulgating regulations for companies to follow to have their websites accessible to blind individuals and those regulations have not been set forth and the Department of Justice has put those regulations on an inactive list.

**PRAYER**

WHEREFORE, Defendant prays that this Court enter a judgment as follows:

1.      That the Complaint be dismissed with prejudice and that judgment be entered in favor of Defendant;

2.      That Plaintiff takes nothing by way of his Complaint;

3.      That Defendant be awarded its costs of suit incurred in defense of this action, including its reasonable attorney's fees; and

4.      For such further and other relief as the Court may deem just and proper.

Dated: November 27, 2024                    Respectfully submitted,

                                            32 BAR BLUES, LLC

By:   _____

Adi Kanlic, ARDC No. 6320888
O'HAGAN MEYER LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
Telephone: 312.422.6100
Fax: 312.422.6110 – F
Email: akanlic@ohaganmeyer.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 27, 2024, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system:

Jon L. Norinsberg, Esq.
Bennitta L. Joseph, Esq.
**JOSEPH & NORINSBERG, LLC**
jon@norinsberglaw.com
bennitta@employeejustice.com
110 East 59th Street, Suite 2300
New York, New York 10022
Tel: (212) 227-5700
Fax: (212) 656-1889
*ATTORNEY FOR PLAINTIFF*



Adi Kanlic, ARDC No. 6320888
O'HAGAN MEYER LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
Tel: 312.422.6100
Fax: 312.422.6110
Email: akanlic@ohaganmeyer.com